BOWLES, Adm'r, Office of Price Administration, v. GOEBEL.

Civil Action No. 351.

District Court, D. North Dakota, S. E. D.

Jan. 29, 1945.

James S. Eriksson, Dist. Enforcement Atty., and D. N. Lindeman, Enforcement Atty., both of Fargo, N. D., for plaintiff.

H. G. Nilles, of Fargo, N. D., and Cyrus N. Lyche, of Grand Forks, N. D., for defendant.

VOGEL, District Judge.

This is a civil action brought by the Administrator of the Office of Price Administration against the defendant, the operator of a garage and sales agency, under the provisions of the Emergency Price Control Act of 1942, and amendments thereof, 50 U.S.C.A.Appendix, § 925(e).

It was the contention of the plaintiff that the defendant sold nine used trucks for amounts exceeding the ceiling price thereon and, accordingly, suit was brought to recover three times the amount of such overcharges. Upon demand by the defendant, the case was tried to a jury, which returned a verdict in favor of the plaintiff for the sum of $2248.83.

Subsequent to the return of the verdict the plaintiff made a motion to set aside the verdict and for judgment or, in the alternative, for a new trial upon the following grounds:

"1. The Court erred in denying plaintiff's motion for a directed verdict.

"2. The Court erred in refusing plaintiff's requested instruction #5 to the jury and particularly the last paragraph of said requested instruction #5."

It is such motion that is now under consideration.

At the close of all of the testimony the plaintiff moved the Court for a directed verdict, asking that the jury be instructed

to return a verdict for three times the amount of the overcharge as claimed by the plaintiff. There was direct conflict as to the overcharges and the amounts thereof. Questions of fact were thus presented for the jury's determination and, accordingly, the motion was properly denied.

From the evidence introduced at the trial, and for the purposes of determining the instant motion, it is fair to assume that the jury, by its verdict in the amount of $2248.83, found for the plaintiff and against the defendant for the exact amount of the overcharge as claimed by the plaintiff, and no more.

Determination of the question herein requires an interpretation of the phraseology used by Congress in passing 205(e) of the Emergency Price Control Act of 1942, as amended by the Stabilization Extension Act of 1944, 50 U.S.C.A. Appendix, § 925 (e), which reads as follows:

"(e) If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine; or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation." 50 U.S.C.A.Appendix, § 925(e).

The Act provides for the bringing of the action by the Administrator of the Office of Price Administration instead of the buyer under circumstances which existed in this case.

In its instructions the Court left for the jury the determination of what amount the defendant should pay between the actual amount of the overcharge and three times such amount. On that point the Court instructed the jury as follows:

"If you have determined that the sale price of the trucks exceeded the 'as is' ceiling price, in accordance with the instructions I have given to you, your verdict must be for the plaintiff for an amount *not less than the total overcharges* as you find them to be, and *not more than three times such amount,* unless you should conclude that the defendant has proved, by a fair preponderance of the evidence, that the violation of the ceiling price was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation.

"The law provides that the amount recoverable in this kind of a suit 'shall be the amount of the overcharge or overcharges * * * if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation.' In other words, if the defendant proves by a fair preponderance of the evidence that his violation of the price schedules herein was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violations, then the amount of the recovery herein can only be the amount of the overcharge. The burden of proof of proving that the violation of the price schedules was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violations rests upon the defendant."

After defining the terms "wilful" and "practicable precautions" and instructing with reference to tests that might be used in determining whether or not the actions of the defendant were wilful or the results caused by failure to take practicable precautions, the Court also instructed as follows:

"If you are not satisfied by a fair preponderance of the evidence that the violations were not wilful nor the result of the failure to take practicable precautions, then you must award to the plaintiff an amount not less than the total overcharge and not more than three times such amount. The law provides that you shall exercise your judgment and discretion as to just what sum *within these limits* should be awarded. That is a matter for

your judgment and your discretion. In exercising it you may properly consider what steps and precautions, if any, the defendant did take to secure compliance with the Price Control Law, even though you are not satisfied that the precautions he did take met the standard of practicable precautions as I have defined that standard to you."

That portion of plaintiff's requested instruction No. 5, which the Court refused to give, and upon which refusal the plaintiff now predicates error, is as follows:

"If you find that the defendant has failed to prove by a preponderance of the evidence that the violations were not wilful, as I have defined 'wilful' to you, then you must award the full legal damages, that is, three times the amount of the overcharge. If you find that the violations were not wilful but you are not satisfied by a preponderance of the evidence that the violations were not the result of failure to take practicable precautions, you must award more than the overcharge as damages and you may award up to three times the amount of the overcharge. In this event you shall exercise your judgment and discretion as to just how much in the way of damages between these limits you shall award. In exercising this discretion you may properly consider what steps and precautions, if any, the defendant did take to secure compliance with the Price Control Law even though you are not satisfied that the precautions he did take met the standard of practicable precautions as I have defined that standard to you."

In order to justify the construction of the law indicated by the requested instruction just quoted, the Administrator in his brief supporting the instant motion, and after quoting the 1944 amendment, 50 U.S.C.A.Appendix, § 925(e), supra, states:

"Interpreting the foregoing language literally leads to an unreasonable result. To illustrate: Assume a case where there is an admitted overcharge of $1000. If the defendant proves both elements of the defense set forth in the proviso, he is liable for $1000. But, if he admits that he intended to violate the regulations, and to overcharge, then his liability is such amount as the Court may determine, from $25 to $3000. Literally, there is no requirement that in such case the Court must grant judgment for at least the amount of the overcharge. Because this appears to lead to an unreasonable result, it is neces-

sary to refer to the legislative history of the amendment to ascertain the intention of Congress."

Thereafter the Administrator quotes excerpts from Committee reports and Senate debates had at the time of the discussion of the amendment and prior to its passage. With reference to resorting to the use of Committee reports and debates in construing an Act of Congress, I direct attention to the following:

"Where the meaning of legislation is doubtful or obscure, resort may be had in its interpretation to reports of Congressional committees which have considered the measure (McLean v. United States, 226 U.S. 374, 380, 33 S.Ct. 122, 57 L.Ed. 260; Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 435, 50 S.Ct. 220, 223, 74 L.Ed. 524); to exposition of the bill on the floor of Congress by those in charge of or sponsoring the legislation (Duplex Printing Press Co. v. Deering, 254 U.S. 443, 475, 41 S.Ct. 172, 179, 65 L.Ed. 349, 16 A.L.R. 196; Richbourg Motor Co. v. United States, 281 U.S. 528, 536, 50 S.Ct. 385, 388, 74 L.Ed. 1016, 73 A.L.R. 1081); to comparison of successive drafts or amendments of the measure (United States v. Pfitsch, 256 U.S. 547, 551, 41 S.Ct. 569, 570, 65 L.Ed. 1084; United States v. Great Northern Ry. Co., 287 U.S. 144, 155, 53 S.Ct. 28, 32, 87 L.Ed. 223); and to the debates in general *in order to show common agreement on purpose as distinguished from interpretation of particular phraseology* (Federal Trade Comm. v. Raladam Co., 283 U.S. 643, 650, 51 S.Ct. 587, 591, 75 L.Ed. 1324, 79 A.L.R. 1191; Humphrey's Executor v. United States, 295 U.S. 602, 625, 55 S.Ct. 869, 872, 79 L.Ed. 1611." (Emphasis supplied) See: Footnote No. 8, Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke, et al., 1937, 300 U.S. 440, 463, 57 S.Ct. 556, 562, 81 L.Ed. 736, 112 A.L.R. 1455.

See also: Federal Trade Commission v. Raladam Co., 1931, 283 U.S. 643, 650, 51 S.Ct. 587, 591, 75 L.Ed. 1324, 79 A.L.R. 1191, wherein the Supreme Court states:

*"It is true, at least generally, that statements made in debate cannot be used as aids to the construction of a statute. But the fact that throughout the consideration of this legislation there was common agreement in the debate as to the great purpose of the act may properly be considered in determining what that purpose was*

and what were *the evils sought to be remedied."* (Emphasis supplied).

We have here no disagreement or obscurity as to the purpose of the amendment in question. There may be, as distinguished therefrom, a difference of opinion as to interpretation of the particular phraseology used by Congress in attempting to effectuate that purpose. The purpose itself and the evils sought to be remedied by Congress appear clear. The original Act, prior to the 1944 amendment, 56 Stat. 33, 50 U.S.C.A. Appendix, § 925, provided for a recovery of either $50 or three times the amount of the overcharge, whichever was the greater. It left no discretion to court or jury to reduce such amount where there was a showing that the violation was not wilful or not the result of failure to take proper measures toward compliance. Subsequent prosecutions under the law, as it then read, indicated to the Congress the unfairness thereof where overcharges might have been made innocently, or where there was a difference in degree of culpability on the part of the various offenders of the Act, and Congress sought to alleviate such condition by the 1944 amendment. Congress sought to eliminate the injustice of charging or penalizing all violators alike, regardless of the degree of their guilt or wrongdoing. That purpose seems to me perfectly clear from the amendment itself, as well as from a reading of the Committee reports and the debates thereon. If that purpose is clear, and, as I have said, I believe it is, then it seems to me that it would be both unwise and improper to attempt to spell from the general debates, and, from statements made by individual law-makers, an interpretation of particular phraseology used by the Congress, more especially so to arrive at a conclusion from the law which appears to have no foundation in the wording of the law itself. The Administrator claims that a literal interpretation of the amendment leads to the unreasonable result he illustrated above. With this I agree. Such literal interpretation does lead to an unreasonable result, ergo, it is not the result intended by Congress and, accordingly, should be discarded, and a reasonable result sought.

In his brief the Administrator further states:

"However, in an attempt to assign some meaning to the language giving the Court discretion as to the amount of recovery, we have concluded that the intention of Congress was to give the Court discretion in a case where the defendant proves his violation was not wilful and shows that he tried to comply with the law but fails to prove that he took every precaution expected of him, and that in such a case the recovery must be more than the amount of the overcharge." ·

The Administrator attempts to interpret the particular phraseology used by Congress by resort to Senate debates. As I have stated, I believe that to be unwise and improper, but, in addition thereto, I am unable to find from a reading of the reports and debates the interpretation sought by the Administrator. As I have already stated, the purpose of the amendment was to alleviate the unfair and unjust results which became apparent after the original Act was passed. In doing so, however, it made the definite proviso that where the defendant, who had the burden of proof thereof, proved both that the acts were not wilful and not the result of failure to take practicable precautions, then the amount of recovery should be only the overcharge. In all other cases Congress provided for a recovery of an "amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine." That portion of the Bill reading as follows: " * * * or (2) an amount not less than $25 nor more than $50 as the court in its discretion may determine" was to take care of the small violators who sold low-priced items at amounts only slightly in excess of the ceiling price, and where suit for three times the overcharge would have no practical law-enforcing effect because the amounts were so small. It has no application to an action of this size involving several thousands of dollars. For suits involving overcharges in excess of small amounts of $25, or less, the law, in skeleton form, reads as follows:

"If any person * * * violates a regulation, order, or price schedule * * * the person who buys such commodity * * * may * * * bring an action against the seller *on account of the overcharge.* In such action the seller, shall be liable for * * * (1) Such amount *not more than* three times the amount of the overcharge, or the overcharges, *upon which the action is based as the court in its discretion may determine.* * * * Pro-

vided, however, that *such amount shall be the amount of the overcharge or overcharges * * * if* the defendant proves that the violation of the regulation, order, or price schedule in question *was neither wilfull nor the result of failure to take practicable precautions* against the occurrence of the violation." (Emphasis supplied)

■ To me it is clear that the action is brought "on account of the overcharge." It is further clear that the recovery, in the event the defendant sustains the burden of proving that the violation was "neither wilfull nor the result of failure to take practicable precautions" shall be only the overcharge. In the event the defendant has failed to prove that the violation was neither wilful nor the result of failure to take practicable precautions, then the recovery shall be not less than the overcharge and not more than three times the overcharge "as the court in its discretion may determine." By "the court" could only have been meant the fact-finding instrument,— that is, either the Judge or jury, whichever determined the facts. Any other conclusion, to my mind, twists legislative intent and spells into the Act something not therein indicated and is, therefore, illogical and inconsistent. Any other interpretation strips from the law any real meaning to the phrase "as the court in its discretion may determine." Such phrase is used twice in the amendment and, in addition thereto, the amendment states "(1) Such amount *not more than three times the amount of the overcharge, or the overcharges.*" The Administrator's interpretation would strip meaning from both phrases, excepting only such limited meaning as he has indicated in his brief, as quoted above, and for which there appears no foundation in the amendment itself. As I have said, the Administrator points out that in the illustration he used, supra, a literal interpretation of the wording of the Act would mean that if the defendant admitted a wilful violation and overcharge his liability would be such amount as the court might determine, from $25 to $3000. Of course, he is correct and, therefore, it is perfectly clear that is not what Congress intended. It is the duty of the courts to interpret Congressional intent in the light of reason. A careful examination of the amendment indicates, at least to my mind, a clear intention to lodge in the fact-finding agency a discretion to fix the amount of recovery anywhere between the actual overcharge and three times such amount. As a safeguard for defendants who did not violate the Act wilfully and whose violations were *also* not the result of failure to take practicable precautions, Congress specifically provided that the recovery should be only the overcharge.

With such Congressional safeguard placed therein for the most innocent of violators, providing a recovery of only the amount of the overcharge, no more and no less, it would be unreasonable to assume that the Congress intended a lesser recovery for those violators who were less innocent; hence, it is clear that Congress intended that in no case should the recovery be less than the overcharge "upon which the action is based" and "not more than three times the amount * * * as the court in its discretion may determine."

The maximum recovery against those not so innocent, i. e. those who failed to prove that the violations were neither wilful nor the result of failure to take practicable precautions, is specifically fixed at "not more than three times the amount of the overcharge or overcharges upon which the action is based as the court in its discretion may determine." The phrase "as the court in its discretion may determine" is a common one of universal understanding and means no more and no less than it says. Congress applied it to the phrase "not more than three times the amount of the overcharge, or the overcharges, upon which the action is based." Had it intended to apply the phrase only to those cases where the actions were not wilful, but were the result of failure to take practicable precautions, as desired by the Administrator, it could easily have so stated. The Administrator by his interpretation seeks to rewrite the law and limit the court's discretion only to cases where there was no intent to violate, but where the defendant had failed to prove that the violations were not the result of failure to take practicable precautions. No such limitation is found in the amendment, nor is there any indication that such was the intention of Congress. Congress applied the phrase "as the court in its discretion may determine" generally to the recovery portion of the Act, excepting only in the cases of the most innocent violators whose actions were both not wilful and not the re-

sult of failure to take practicable precautions. It seems to me, from the wording of the amendment and the phraseology used, that the clear intent of Congress was to provide for a minimum recovery of the exact amount of the overcharge and a maximum recovery of three times that amount, leaving the amount of the recovery within those limits to be fixed in accordance with the discretion of the court, excepting only where the violator had proved that his violations were both not wilful and not the result of failure to take practicable precautions. That, to my mind, is the most reasonable construction that can be placed upon the words used by Congress to express its intent.

In his brief and by his interpretation of the amendment the Administrator expresses fear that juries may return verdicts for only the amount of the overcharge in cases of wilful violations, and that the purposes of the Act might thereby be defeated. As was stated by Mr. Justice Douglas in Hecht Company v. Bowles, 1944, 321 U. S. 321, 331, 64 S.Ct. 587, 592:

"The Administrator does not carry the sole burden of the war against inflation. The courts also have been entrusted with a share of that responsibility."

Dealing with the practical problems of law enforcement it is very easy to imagine cases where the interpretation sought by the Administrator might result in the same kind of injustices and unfair results derived from prosecutions under the original Act, and which necessitated the amendment. Few cases are alike in all aspects. Degrees of guilt or of wrongdoing are varied and widespread. The penalty should be made to fit the violation. It seems to me that Congress very properly sought to place the burden of determining what the penalty should be upon the court or the jury dealing with the facts in each individual case. A contrary view lacks faith in both court and jury and was not, at least to my mind, so intended by Congress.

■ As has been indicated, I am of the opinion that the Court properly charged the jury, and that the jury exercised its discretion in returning a verdict for the amount of the overcharges only. The Court left for the determination of the jury the question of the amount of overcharges, if any, and the question of whether or not the defendant had sustained the burden of proving that the overcharges were neither wilful nor the result of failure to take practicable precautions. It also left for the jury to fix what amount the defendant should have to pay, not less than the amount of the overcharges, as determined by the jury, and not more than three times such amount.

■ There was dispute in the testimony as to whether there were violations and as to whether the violations were wilful; there was dispute in the testimony as to whether the defendant had taken practicable precautions to avoid overcharges. The defendant also attempted to prove that the trucks sold were guaranteed trucks, and that the guaranteed ceiling price should apply. Had the guaranteed ceiling price applied there would have been no violations as the prices received for the trucks were in all instances less than such guaranteed ceiling price. The evidence was such, however, that the Court determined, as a matter of law, that the trucks were not guaranteed and instructed the jury to apply the "as is" ceiling price, which was much lower. The Court did, however, allow the jury to consider such evidence as there was with reference to guarantees or attempted guarantees in determining whether or not the violations were wilful and in determining the good faith of the defendant.

The jury, as the agency finding the facts, apparently concluded that the only amount the defendant should be forced to pay would be the actual overcharges as it found them to be. In arriving at such conclusion it is possible that the jury may have given consideration to the attempts to give guarantees, the fact that one of the trucks on which overcharges were included in the amount of its verdict was returned by the purchaser to the defendant, and that the defendant repaid to the purchaser the full amount thereof, and also that numerous other trucks on which overcharges were included in the amount of the jury's verdict had been repaired by the defendant without additional charge to the purchaser. It may very well be that the jury, in the exercise of its discretion under the law, felt that the amount repaid by the defendant to the one purchaser who returned the truck, and the cost of repairing other trucks, was sufficient penalty in addition to the costs and difficulties attendant upon this suit, and that the defendant should not be required to pay

more. As justification for such conclusion attention is directed to the fact that after the jury had deliberated for a considerable period it returned for additional instructions, wanting to know whether the Court had the right to treble or increase the amount of its verdict. The Court reinstructed the jury in substance as quoted above.

Plaintiff's motion will be in all things denied.